G. HENRY WELLES, Bar No. 157193
henry.welles@bbklaw.com
BEST BEST & KRIEGER LLP
Post Office Box 13650
Palm Desert, CA 92255-3650
74-760 Highway 111, Suite 200
Indian Wells, CA 92210
Telephone: (760) 568-2611
Facsimile: (760) 340-6698

Attorneys for Plaintiff
ERNIE BALL, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERNIE BALL, INC., a California corporation<br><br>Plaintiff,<br><br>v.<br><br>GAMECHANGER MEDIA, INC., a Delaware corporation and Does 1-10, inclusive,<br><br>Defendant. | Case No.<br><br>COMPLAINT FOR DECLARATORY RELIEF OF NON-INFRINGEMENT AND NON-DILUTION OF TRADEMARK |

## COMPLAINT FOR DECLARATORY RELIEF

Plaintiff, ERNIE BALL, INC. ("EB") brings this action against Defendant, GAMECHANGER MEDIA, INC. and Does 1-10 (hereineafter "GM"), for a judgment declaring that EB's trademark, THE GAME CHANGER, does not infringe upon or dilute GM's purported trademark GAMECHANGER and for other relief. For its Complaint against GM, Plaintiff alleges as follows:

## NATURE OF THE ACTION

1. The claims asserted in this Complaint arise under the Lanham Act of the United States, 15 U.S.C. § 1125, et seq., and under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and are brought for a declaration by this court that the Plaintiff EB has not infringed and is not infringing upon or diluting GM's purported trademark GAMECHANGER.

## JURISDICTION AND VENUE

2. This court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1338, 2201, 2202 and 15 U.S.C. § 1121(a), and jurisdiction over the state law claims under 15 U.S.C. § 1367. An actual and justiciable controversy exists between Plaintiff and GM to which Plaintiff requires an immediate and definitive declaration of its rights by this court.

3. This court has personal jurisdiction over GM because, on information and belief, GM conducts regular and continuous business in California, including in Riverside County. (See Exhibit "A"). GM further conducts transactions in interstate commerce, namely, by allegedly developing and marketing software applications that are distributed through Apple App Store and are advertised through the Internet.

4. Upon information and belief, GM asserts an exclusive right to use the GAMECHANGER mark nationwide, and in California, and on information and belief purports to own a federal registration for the purported trademark GAMECHANGER.

1  5. GM's actions giving rise to this Complaint were purposefully directed towards Plaintiff in California and intended to restrict Plaintiff's activities in interstate commerce, including in California, and otherwise harm EB, which is incorporated in the State of California, and which has it principal place of business in California in this judicial district. GM could reasonably foresee being sued by Plaintiff in the State of California for claims arising from its actions. The exercise of jurisdiction over GM does not offend traditional notions of fair play and substantial justice.

6. Venue is proper in this court pursuant to 28 U.S.C. § 1391(b) and (c).

## PARTIES

7. Ernie Ball, Inc. is a corporation organized and existing under the laws of the State of California, having its principal place of business at 53973 Polk Street, Coachella, California 92236, which is within this Judicial District.

8. Upon information and belief, GameChanger Media, Inc. is a corporation organized and existing under the laws of the State of Delaware, having its principal place of business at 88 Greenwich Street #2008, New York, New York 10006, and doing business with the State of California and within this Judicial District.

9. Plaintiff is ignorant of the true names and capacities of Defendants sued herein as DOES 1- 10, inclusive, and therefore sues these Defendants by such fictitious names. Plaintiff will amend this complaint if appropriate to allege their true names and capacities when ascertained. Plaintiff is informed and believes, and thereon alleges, that each of the fictitiously named Defendants is responsible in some manner for the occurrences herein alleged, and that Plaintiff's injuries herein alleged were proximately caused by their conduct. Plaintiff is informed and believes, and thereon alleges, that at all times herein mentioned, each of the Defendants was the agent and employee of each of the remaining Defendants, and

in doing the things hereinafter alleged, was acting within the course and scope of such agency and employment.

## PRELIMINARY ALLEGATIONS

### A. Ernie Ball's "The Game Changer"

10. Plaintiff Ernie Ball, Inc. is a world famous manufacturer of guitars and basses and sells and distributes such products, and related products, such as guitar strings, guitar straps, super locks, hardware parts and cables, guitar pedals, and guitar slides under its brand names ERNIE BALL and MUSIC MAN and THE GAME CHANGER, among others.

11. EB owns U.S. Trademark Registration Number 4,150,554 for the mark THE GAME CHANGER for a "programmable electronic control circuit used to manipulate an audio signal in electric stringed musical instruments", registered May 29, 2012. EB first used the mark in commerce on March 31, 2012.

12. The EB product sold under the mark THE GAME CHANGER is a guitar pickup switching system used to rewire analog guitar and bass pickups by combining any order of pickup coils in series, parallel, forward or reverse phase giving access to an extensive library of never before heard tones. (See Exhibit "B").

13. THE GAME CHANGER pickup switching system is installed in and used with the EB reflex® guitar and bass (see Exhibit "C" and "D" respectively). The switching system is accessed directly from the instrument. For advanced functionality, the system can be accessed and programmed by computer and includes the ability to be programmed through an Apple mobile App. (Exhibit "E"). The system interface with the computer is by USB jack or midi jack and requires a digital guitar interface such as the type shown on Exhibit "F" hereto.

### B. GameChanger Media's "Game Changer"

14. On information and belief, GM purports to own U.S. Trademark Registration Number 3,800,759 for the purported mark GAMECHANGER for use in connection with "computer application software for mobile phones", registered

1  June 8, 2010 and claiming first use in commerce of GAMECHANGER mark was
2  January 1, 2010.
3      15.    The GAMECHANGER is, according to GM, a "mobile app and
4  website [that] provide[s] scorekeeping, stats, live GameStreams and recap stories
5  for thousands of amateur baseball, softball, and basketball teams." (Exhibit "G").
6  The scope of GM's GAMECHANGER use of its mark in commerce is limited to
7  this narrow field.
8      C.    **The Parties' Actual and Justiciable Controversy**
9      16.    GM asserts by cease and desist letter dated October 23, 2013 that
10 Plaintiff EB's use of the mark THE GAME CHANGER is likely to cause confusion
11 with GM's purported trademark GAMECHANGER, and GM further states EB is
12 diluting GM's mark. GM demands that Plaintiff EB cease and desist use of said
13 mark by October 31, 2013. GM states that if EB continues use of the mark it may
14 be viewed as bad faith and may subject EB to enhanced or punitive damages and
15 implies legal action will ensue.
16     17.    GM's actions have created an objectively reasonable apprehension that
17 GM will continue to assert its unfounded claims of trademark infringement and
18 dilution against Plaintiff now and in the future.
19     18.    Plaintiff alleges that GM is acting in bad faith and is liable for misuse
20 of trademark.

### COUNT I
### *Declaratory Judgment of EB's Non-Infringement and Non-Dilution of GM's GAMECHANGER Mark Under 11 U.S.C. § 1125*

24     19.    The preceding paragraphs 1 through 18 of the Complaint are
25 incorporated by reference as if fully set forth herein.
26     20.    GM has alleged that EB's mark THE GAME CHANGER is likely to
27 cause confusion with GM's GAMECHANGER mark, and asserts that this
28 constitutes trademark infringement and trademark dilution under 11 U.S.C. § 1125.

79803.00001\8355758.1

21. Plaintiff alleges there is absolutely **no** likelihood of confusion between the marks and the source of the connected goods and services in commerce, and no infringement or dilution under 11 U.S.C § 1125, or at all, because among other things:

    (a). Plaintiff Ernie Ball, Inc. is a world famous manufacturer of guitars and basses and sells and distributes related products such as guitar strings, guitar straps, super locks, hardware parts and cable, guitar pedals and guitar slides under its brand names ERNIE BALL, MUSIC MAN and STERLING and THE GAME CHANGER, among others.

    (b). the goods and services in question of EB and GM are completely different and their nature and source in commerce could not be confused by any consumer. No one would buy an expensive guitar switching system from a famous maker in the industry such as Ernie Ball (whose guitar brand Music Man was started by Leo Fender, one of the original pioneers of the electric guitar and inventor of the iconic Stratocaster®) and mistakenly think it was buying an inexpensive product/service from a sports industry company that provides an app to keep score in amateur baseball, softball and basketball, and vice-versa.

    (c). there is a very high barrier to any potential confusion. EB Guitars with The Game Changer switching installed are very high end quality instruments that cost in excess of $2,000 and are not casual purchases. Only discriminating and knowledgeable consumers skilled in music buy these products. In contrast, it appears that most users of the GAMECHANGER sports scoring app use it for free. Furthermore the subscription price for the GAMECHANGER sports scoring app is low, being $40 a year. (Exhibit "G"). No one looking to purchase a $40 a year sports app for keeping score in Little League baseball and other amateur sports would confuse this with a

1  product and service involving a more than $2,000 guitar with very
2  sophisticated computer switching, and vice-versa.
3       (d).   on information and belief there is not, and cannot legitimately
4  be, any proof of actual confusion that anyone has been confused into
5  mistakenly believing that EB's product bearing the mark THE GAME
6  CHANGER is produced or sponsored by GM, nor vice-versa. Nor is it likely
7  or even possible that GM will expand its goods to include selling guitars and
8  providing pickup switching systems for guitars. Indeed, that is not even
9  within the natural zone of expansion.
10      (e).   consumers purchasing the goods and services of EB would
11 exercise a high degree of care and discrimination in making their purchase
12 and would not likely be confused as to the source. This is notwithstanding
13 that virtually no sophistication is needed to distinguish the products and their
14 source, given the completely different nature of the goods and services.
15      (f).   the trade channels of the marks are different and distinct and
16 discrete. The musical product industry in which EB sells its products and
17 services markets and sells the products in specific channels, including:
18 annual industry wide trade shows; very large online retailers such as
19 Musician's Friend, Guitar Center, and Music 123; in trade magazines;
20 manufacturer websites; and approved dealers. In contrast it appears that
21 GM's amateur sports App is marketed and distributed by word of mouth and
22 through the Internet, in none of the above referenced channels.
23      (g).   on information and belief, EB and GM do both have apps for
24 their products and services appearing in the Apple App Store, but there is no
25 likelihood of confusion as it requires a search by an informed user to find the
26 App in question. Furthermore other game changer Apps appear side by side
27 with the Defendant's' GAMECHANGER App in the Apple App Store and
28 they are for sports. (See Exhibit "H"). In addition the EB App cannot be

used without prior purchase of a guitar or bass with the switching units installed, and requires an additional and special interface not needed for GM's product. (See Exhibit "F").

(h). there further is no likelihood of confusion because multiple trademarks are registered with the U.S. Patent and Trademark Office ("USPTO") for GAMECHANGER and/or GAME CHANGER or similar names. The protection afforded to these mark is narrowly related to the goods and services provided thereunder and GM's purported mark is weak. In addition multiple companies use the Game Changer name or a similar name for goods and services that are different and/or in different industries from the Parties.

(i). The USPTO has already made a determination that EB's mark THE GAME CHANGER and GM's mark GAMECHANGER can coexist on the Principal Register because the marks are used on unrelated products and there is no likelihood of confusion.

(j). EB's trademark application for registration of the mark THE GAME CHANGER, filed after GM's trademark application, was approved by the USPTO and was not refused on the grounds that it could be confusingly similar to GM's registration.

(k). In addition to the EB trademark registration and GM trademark registration, a variety of other GAME CHANGER trademarks (about 74 records found) peacefully co-exist on the registry for use in connection with services similar to GM's and for other services, which suggests that customers will look to the missing or additional element to distinguish the source of the goods and to avoid confusion. This also shows that protection for the GAMECHANGER mark is weak.

(l). A small sample of "game changer" marks on the USPTO Principal Register include: GAME CHANGER (Registration Number

4211228), GAMECHANGER (Registration Number 4415610), GAME CHANGER (Registration Number 4408408), GAME CHANGER (Registration Number 4287921), and GAME CHANGER (Registration Number 4368359).

(m). there is no dilution of GM's trademark under 15 U.S.C. § 1125, or at all, by EB's use of THE GAME CHANGER for all the reasons set forth hereinabove, and because Plaintiff is informed and believes GM's mark GAMECHANGER is not distinctive, famous, or unique. It is not generally known outside the amateur sports industry. Rather, it is a weak mark narrowly linked to a specific product/service in a specific industry. Indeed, EB is much more famous and unique and well known than GM.

22. An actual and justiciable controversy exists as to the claimed infringement and dilution of GM's trademark and GM's actions and claims as set forth hereinabove have placed the Plaintiff in objectively reasonable apprehension of suit.

23. Unless declaratory judgment in the Plaintiffs' favor is entered, Plaintiff is informed and believes that GM will continue to assert groundless charges of infringement and dilution and/or will otherwise seek to enforce its asserted trademark rights against Plaintiff and those in privity with Plaintiff, including Plaintiff's customers and prospective customers.

24. Accordingly, Plaintiff requests that this court declare that EB's mark THE GAME CHANGER does not infringe upon GM's purported mark, and does not dilute GM's mark, under 11 U.S.C. 1125 or at all.

25. Plaintiff requests an award of reasonable attorney fees incurred as allowed by the Lanham act and under California state law, in an amount as determined by the court upon application.

///

///

## COUNT II

*Declaratory Judgment of EB's Non-Infringement and Non-Dilution of GM's GAMECHANGER Mark Under Miscellaneous and Ancillary State Law*

26. The preceding paragraphs 1 through 18 and 20 through 25 of the Complaint are incorporated by reference as if fully set forth herein.

27. As set forth hereinabove, an actual controversy exists as to the claimed infringement and dilution of GM's trademark and GM's actions and claims as set forth hereinabove have placed the Plaintiff in objectively reasonable apprehension of suit.

28. Plaintiff requests that this court declare that EB's mark THE GAME CHANGER does not infringe upon GM's purported mark, and does not dilute GM's mark, and does not violate any trademark rights of GM under California state law.

29. Plaintiff requests an award of reasonable attorney fees incurred as allowed by the Lanham act and under California state law, in an amount as determined by the court upon application.

## REQUESTED RELIEF

Wherefore, Plaintiff Ernie Ball, Inc. requests the following relief:

A. that this court declare that Plaintiff does not and has not infringed GM's purported mark GAMECHANGER and that EB's mark THE GAME CHANGER does not infringe upon the purported mark GAMECHANGER;

B. that this court declare that Plaintiff's use of the mark THE GAME CHANGER mark does not dilute GM's purported mark GAMECHANGER under 15 USC § 1125 or at all;

C. that this court declare that EB's mark THE GAME CHANGER does not infringe upon GM's purported mark, and does not dilute GM's mark, and does not violate any trademark rights of GM under California state law;

1      D.    that this court enjoin GM from asserting that it has rights in its purported GAMECHANGER trademark to the exclusion of Plaintiff, its representatives, agents, customers, and/or affiliates, present and prospective;

    E.    an award of reasonable attorney fees incurred by Plaintiff as allowed by the Lanham act and under California state law, in an amount as determined by the court upon application;

    F.    an award of costs; and

    G.    that this court grant such further relief as it deems just and proper.

Dated: October _25, 2013

BEST BEST & KRIEGER LLP

By: _____
G. HENRY WELLES
Attorneys for Plaintiff
ERNIE BALL, INC.

79803.00001\8355758.1